UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


ELSEBETH BAUMGARTNER,                    )  1:10CV2810
                                          )
            Petitioner                    )  JUDGE BENITA PEARSON
                                          )  (Magistrate Judge Kenneth S. McHargh)
      v.                                  )
                                          )
LaSHAUN EPPINGER,                         )
            Warden,                       )
                                          )
            Respondent                    )  REPORT AND
                                          )  RECOMMMENDATION

McHARGH, MAG. J.

      The petitioner Elsebeth Baumgartner ("Baumgartner") has filed a petition[1]

pro se for a writ of habeas corpus, arising out of her 2006 convictions for several

counts of intimidation and retaliation, in the Cuyahoga County (Ohio) Court of

Common Pleas.  In her petition, Baumgartner sets forth six grounds for relief:

      1.  Petitioner's indictment for internet web postings, conviction and
      sentence of four years in prison violate the First Amendment and the
      Fourteenth Amendment to the U.S. Constitution, and the Ex Post
      Facto Clause.

      2.  Petitioner's indictment, conviction, and sentence for intimidation
      RC 2921.03 and retaliation (2921.05) for webposts including a parody
      of an Eminem rap violate the Fifth Amendment to the US Constitution
      because the statutes are void for vagueness.

_____

      [1]  Baumgartner had three petitions for writ of habeas corpus pending in this
court.  See also Baumgartner v. Eppinger, No. 3:10CV0678 (N.D. Ohio) (dismissed
July 5, 2012), and Baumgartner v. Shewalter, No. 1:10CV2811 (N.D. Ohio)
(dismissed May 31, 2012).

1

3.  Petitioner's no contest pleas were not knowingly, intelligently, and voluntarily made because the indictment was defective and the pleas were induced by a plea deal that was breached by the trial court and the State in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4.  Petitioner's indictment, conviction and sentence are the result of selective prosecution in violation of the First and Fourteenth Amendments (Equal Protection) and Public Policy of the United States.

5.  Petitioner was denied her right to a fair trial pursuant to the Sixth Amendment and her right to appellate review due actual judicial bias including acting without jurisdiction.  Judge Saffold revoked Petitioner's bond repeatedly without notice or service and denied Petitioner representation of counsel.  She allegedly posted anonymous defamatory postings on Cleveland.com in March 2010 as exposed by the Plain Dealer about Petitioner.  Appeals court refused to review valid errors and acted without jurisdiction.

6.  Petitioner was denied a fair trial due to prosecutorial misconduct and effective assistance of trial and appellate counsel by the invasion of the attorney client relationship including seizure of attorney client and attorney work product material and the withholding and willful destruction of exculpatory evidence in violation of the Sixth Amendment and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. Petitioner's legal files and computer records were seized by the prosecutor's office on 2-1-06 and then lost.  Prosecution also induced destruction of website Erie Voices as a part of plea deal with co-defendant.

(Doc. 1, § 12.)

The respondent requested an extension of time to file the Return of Writ, which was granted, and the Return was timely filed on March 18, 2011.  (Doc. 5, 7.) Baumgartner has filed five motions for extension of time to file her Traverse.  (Doc. 9, 11, 14.)  The first three motions were granted, and thus multiple extensions of

2

time to file were granted.  (Doc. 10, 12, 17.)  Various other motions were filed during that time as well.  See generally doc. 15, 18, 21.

When the court granted her third motion for extension of time to file her Traverse, the court noted that it was granting a final extension of time, and that no further extensions would be granted.  (Doc. 17, at 6.)

Nevertheless, Baumgartner filed another (fourth) motion for extension of time.  (Doc. 22.)  Because there had been an objection pending with the District Judge (doc. 18), the court granted a fourth extension of time to file.  (Doc. 23.)

However, the court denied the petitioner's fifth motion for extension of time.  (Doc. 25, 28.)  Despite the multiple extensions of time, and the filing of numerous additional motions (doc. 31, 32, 33, 36, 45, 47, 49, 50, 51, 53), no Traverse has yet been filed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

> The Cuyahoga County Grand Jury indicted Baumgartner in two
> separate cases.[2]  On August 15, 2005, in Case No. CR-470184, the
> grand jury indicted Baumgartner on eleven counts of intimidation, two

---

[2]  This habeas petition arises out of Case No. CR-478555.  See doc. 1, at §1(b). The other, related case (CR- 470184) was the subject of a separate habeas petition (No. 1:10CV2811).  Although there is a nexus between the cases, events relating solely to the other case (CR- 470184) will not be recited in this memorandum, to the extent possible.

counts of retaliation, one count of possessing criminal tools, and four counts of falsification.

The above indictments stemmed from Baumgartner's conduct against retired Judge Richard Markus ("Judge Markus").  Judge Markus presided as a retired visiting judge over civil cases in Erie and Ottawa counties involving Baumgartner.  In those proceedings, Judge Markus found Baumgartner to be a vexatious litigator and found her liable to opposing parties.

At the conclusion of the civil cases, Judge Markus complained to law enforcement officials about Baumgartner's conduct during the pendency of the civil matter.  Judge Markus specifically complained that Baumgartner, in an effort to intimidate him, repeatedly sent him e-mails accusing him and other public officials of wrongdoing.  The indictments also charged Baumgartner with allegedly sending e-mails containing materially false information to Judge Markus's three adult children, in an effort to intimidate Judge Markus.

On March 23, 2006, in Case No. CR-478555, the grand jury returned a second multi-count indictment against Baumgartner.  This indictment(s) charged Baumgartner with one count of falsification, ten counts of intimidation, two counts of retaliation, and one count of possessing criminal tools.

The second set of indictments stemmed from Baumgartner's alleged conduct against Bryan Dubois, her co-defendant in the first case.  The indictment charged Baumgartner with retaliating against Dubois and his wife for their alleged role as government witnesses in Baumgartners's first case.

The indictment alleged that Baumgartner posted a modified version of a rap song by national recording artist Eminem on the internet.  The indictment alleged that in the modified rap song, Baumgartner intimidated the Duboises by referencing domestic violence in the Duboises's household in the same breath as children services.

* * * * * *

On [November 15, 2006], pursuant to [a] plea agreement with the State, Baumgartner pleaded no contest to four counts of intimidation and two counts of retaliation in Case No. CR-478555.  Pursuant to the plea agreement, the State dismissed the remaining charges.  The trial

court found Baumgartner guilty of three counts of intimidation and two counts of retaliation.

On December 21, 2006, in Case No. CR-470184, the trial court sentenced Baumgartner to concurrent prison terms of four years on each count.  In Case No. CR-478555, the trial court also sentenced Baumgartner to concurrent prison terms of four years on each count. The trial court ordered the sentences in the two cases to be served consecutively for a total of eight years in prison.

(Doc. 7, RX 90, at 1-3; State v. Baumgartner, No. 89190, 2009 WL 344988, at *1-*2

(Ohio Ct. App. Feb. 12, 2009).)

## A.  Direct Appeal

Baumgartner filed a timely notice of appeal, and presented the following

eight assignments of error:

1. Appellant's convictions on all 15 counts must be reversed because the State's proffers were insufficient to establish the offenses.

2. Venue is improper for all the counts in both indictments, requiring reversal of Appellant's convictions.

3. Defendant-Appellant's no contest pleas in both cases were not knowingly, intelligently and voluntarily made and the indictment in Case No. 06-CR-478555 is defective in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution.

4. Appellant's convictions on Counts 4 and 5 in Case No. 478555 violate the Equal Protection Clause of the U.S. Constitution and Sec. 16, Art. I of the Ohio Constitution.

5. The retaliation statute [R.C. 2921.05] and the intimidation statutes [both R.C. 2921.04(B) and R.C. 2921.03] and are overbroad on their face, while R.C. 2921.05 and R.C. 2921.04(B) are also overbroad as applied in this case and, as such, violate Appellants' right of access to the courts, due process, and her right to speech and to petition for redress of grievance under the First and Fourteenth Amendments and

5

Art. IV of the United States Constitution and Sec. 11, Art. I of the Ohio Constitution.

6. Defendant-Appellant's convictions on Counts 4, 5, 12 and 13 in Case No. 478555 violate the First Amendment to the United States Constitution and Art. I, Sec. 11 of the Ohio Constitution because the altered rap song lyrics in question do not constitute a true threat and they are protected artistic expression.

7. R.C. 2921.03(A) constitutes an unconstitutional content-based regulation of speech in violation of the First Amendment to the U.S. Constitution and Sec. 11, Art. I of the Ohio Constitution, requiring a reversal of Appellant's convictions on Counts 1, 4, 5, 6, 7, 8, 9, and 10, in Case No. 470184.

8. Public policy dictates that Appellant should have absolute immunity from criminal prosecution for making false allegations within civil lawsuits, requiring a reversal of her convictions on Counts 8, 9, 10, 12 and 13 in case No. 470184.

(Doc. 7, RX 77.)

The court of appeals remanded on jurisdictional grounds, indicating that journal entries for sentencing on certain counts could not be found in the record. (Doc. 7, RX 80.) The trial court subsequently corrected the sentencing entries. (Doc. 7, RX 102.) Baumgartner then filed a notice of appeal from the corrected sentencing. (Doc. 7, RX 103.) The court granted her motion to consolidate the appeals. (Doc. 7, RX 84, 106.)

Baumgartner was granted leave to file a supplemental brief, in which she raised the additional assignment of error:

[9.] In Case Nos. 470184 and 478555, the trial court committed reversible error in its February 27, 2008, judgment entries because the court's findings of guilt, along with the sentences and fines imposed therein, differ from the pronouncements of judgment and sentence in the appellant's presence, in violation of her rights to due process and to

6

counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Secs. 10 and 16 of the Ohio Constitution, along with Crim.R. 43(A).

(Doc. 7, RX 85.)

On Feb. 12, 2009, the court of appeals affirmed the judgment of the trial court.[3]  (Doc. 7, RX 90; Baumgartner, 2009 WL 344988.)

Baumgartner appealed this decision to the Supreme Court of Ohio, setting forth the following proposition of law:

> 1. When artistic impression does not reasonably encompass a true threat, criminalizing that expression as retaliation under R.C. 2921.05 or intimidation under R.C. 2921.03 violates First Amendment free speech protections.

(Doc. 7, RX 98.)  On July 1, 2009, the Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 99; State v. Baumgartner, 122 Ohio St.3d 1457, 908 N.E.2d 946 (2009).)  The United States Supreme Court denied Baumgartner's subsequent petition for a writ of certiorari on Nov. 30, 2009.  (Doc. 7, RX 100; Baumgartner v. Ohio, 130 S.Ct. 754 (2009).)

### B.  Petition for Post-Conviction Relief

On Sept. 29, 2008, Baumgartner filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21, based on three claims:

---

[3]  As to Case No. 470184, which is not the subject of this petition, the court remanded for corrections in the journal entries.  (Doc. 7, RX 90, at 19-20; Baumgartner, 2009 WL 344988, at *8.)

1.   The sentencing entry of February 27, 2008 is a void judgment because the Court acted unlawfully and in violation of US Constitution Article IV (privileges and immunities clause) and Article VI (Supremacy Clause and Oath of office).

2.  The Court engaged in judicial misconduct in violation of the Fourteenth Amendment of the US Constitution guaranteeing equal protection of the law and due process.  The Court was not a neutral magistrate and based its decisions on race, gender, religious and political affiliation.  The Court engaged in cruel and unusual punishment by incarcerating Petitioner several times for her exercise of her First Amendment rights without notice and required hearings. The Court acted as prosecutor and interfered with attorney client privilege and work product by allowing confiscation of legal work.

3.  Prosecutorial misconduct and or vindictiveness in violation of the 14th Amendment.  Includes intentional withholding and or destruction of Brady material in two counties.

(Doc. 7, RX 123.)  The court denied the petition.  (Doc. 7, RX 125.)

Baumgartner did not appeal this decision.

### C.  Motion to Withdraw Plea

On Oct. 20, 2008, Baumgartner filed a motion to withdraw her no contest

pleas, based on the following claims:

1.  The Defendant should be permitted to withdraw her no contest pleas in Case Nos. 05-470184 and 06-478555 because the plea agreement has been breached by the imposition of extraordinary appeal bond conditions which were not part of her plea agreement and which resulted in the revocation of her bond.

2.  The State has breached the plea agreement by taking the position on appeal that it did not agree that Mrs. Baumgartner would be permitted to appeal the sufficiency of its proffers on the counts of which she was convicted.  Alternatively, if Mrs. Baumgartner did not preserve this right, or such an appeal is unavailable to her by law, her pleas were not intelligently and voluntarily entered into because her reasonable understanding of the terms of the plea agreement was that she would be permitted to appeal the sufficiency of the proffers.

8

(Doc. 7, RX 126.)  The court denied the motion on Dec. 4, 2008.  (Doc. 7, RX 128.)

Baumgartner did not appeal this decision.

### D.  Application to Reopen

Finally, on June 3, 2009, Baumgartner filed a pro se application for reopening under Ohio App. R. 26(B).  Baumgartner argued that appellate counsel was ineffective for failing to raise the following issues:

1. Appellant's sentences in 470-184 and 478-555 are contrary to law and constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution and violate double jeopardy under the Fifth Amendment to the United States Constitution because the eight year sentence is comprised of multiple punishment for a single act and is in retaliation for exercising her First Amendment rights to comment on government and matters of public concern and petition for redress of grievances and/or based on her race, gender, ethnicity, and religious beliefs in violation of Appellant's rights under the First Amendment and equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

2. Appellant's No Contest Pleas to all counts in 470-184 and 478-555 were not knowingly, voluntarily and intelligently made in violation of her rights under the due process clause of the Fourteenth Amendment to the United States Constitution and Art. I Section 16 of the Ohio Constitution because the Court breached the terms of the plea by adding non negotiated conditions to the Appeal bond and Appellant believed the right to challenge the sufficiency of the proffers was a term of her plea agreement.

3. Appellant was denied effective representation of counsel and her right to a fair trial in violation of the Sixth Amendment of the United States Constitution and the Due Process and Equal Protection Clauses of the Fourteenth Amendment by the seizure and destruction of her legal computer which contained attorney client and work product protected material by the state and the destruction of her website as part of a plea agreement with her co-defendant with the approval of the trial court judge and her rights under the Fourth Amendment to the United States Constitution and under Article 14 Article I of the

9

Ohio Constitution to be free from unreasonable searches and seizures were violated by the February 1, 2006 search of her residence and the trial court erred in denying her motion to suppress the evidence seized.

4. RC 2921.03, 2921.04 and 2921.05 are content based, overbroad and vague in violation of the First Amendment to the United States Constitution and Article I Section 11 and 16 of the Ohio Constitution facially and as applied because they unlawfully target a particular viewpoint and reach a substantial amount of constitutionally protected conduct in the areas of speech, press, association, conscience and the right to petition for redress of grievances.

5. R.C 2921.03, R.C. 2921.04(B) and R.C. 2921.05 are void for vagueness under the due process clause.

6. The trial court erred by failing to dismiss the case for violations of Appellant's right to a speedy trial in violation of the Sixth Amendment to the United States Constitution and her statutory rights under Ohio RC 2945.71(C)(2) and 2945.73(B).

7. The selective prosecution and incarceration of a Christian civil rights activist, pro se litigant and internet publisher/writer for her internet telecommunications and written statements in US District Court civil rights lawsuits that criticizes, parodies, and/or reports misconduct that is required to be reported by law violates the Defendant's rights under the due process and equal protection clauses of the Fourteenth Amendment, the First Amendment, Article IV of the US Constitution and Article I Section 11 of the Ohio Constitution. And is contrary to public policy.

8. The Trial Court's findings of guilt upon entry of a No Contest plea was an abuse of discretion because the Indictments contained no facts and elements were specifically negated by the explanation proffered in violation of the due process and equal protection clauses to in the Fourteenth Amendment to the US Constitution and Ohio's differing standards of appellate review for misdemeanor and felony no contest pleas and Federal Crim. R. 11. Violate the due process/equal protection clauses of the 14th Amendment.

(Doc. 7, RX 133.)

The court of appeals denied her application.  (Doc. 7, RX 135; State v. Baumgartner, No. 89190, 2009 WL 2620510 (Ohio Ct. App. Aug. 24, 2009).)  The court refused to consider the sixth and seventh proposed assignments of error, which were not contained within the page limitations imposed by Ohio App. Rule 26(B)(4).  (Doc. 7, RX 135, at 4; Baumgartner, 2009 WL 2620510, at *2.)  The court determined that the second, fourth, fifth and eighth proposed assignments of error were barred by res judicata.  (Doc. 7, RX 135, at 6, 8-10; Baumgartner, 2009 WL 2620510, at *3-*4.)

The court ruled that Baumgartner's first assignment of error did not demonstrate prejudicial error.  (Doc. 7, RX 135, at 5-6; Baumgartner, 2009 WL 2620510, at *2.)  As to the third claim, the court found that Baumgartner had not demonstrated how counsel was deficient, or how she was prejudiced, concerning the trial court's denial of her motion to suppress.  (Doc. 7, RX 135, at 7; Baumgartner, 2009 WL 2620510, at *3.)

Baumgartner did not appeal this decision to the state high court.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Baumgartner has filed her petition pro se.  The pleadings of a petition drafted by a pro se litigant[4] are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  PROCEDURAL DEFAULT

The respondent contends that a number of Baumgartner's claims have been procedurally defaulted.  (Doc. 7, at 19-26.)

A habeas claim may be procedurally defaulted in two distinct ways.  First, by failing to comply with state procedural rules.  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).  Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process.  Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)).

---

[4]  The court notes, however, that petitioner Baumgartner is a former attorney.  See generally Office of Disciplinary Counsel v. Baumgartner, 100 Ohio St.3d 41, 796 N.E.2d 495 (2003) (permanently disbarred).

A habeas petitioner cannot obtain relief unless she has completely exhausted her available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

Although Baumgartner raised a variety of claims through her direct appeal, her petition for post-conviction relief, her motion to withdraw plea, and her Rule 26(B) application to reopen, she only raised a single claim before the Supreme Court of Ohio.  On direct appeal, Baumgartner set forth the following proposition of law:

> 1. When artistic impression does not reasonably encompass a true threat, criminalizing that expression as retaliation under R.C. 2921.05 or intimidation under R.C. 2921.03 violates First Amendment free speech protections.

(Doc. 7, RX 98.)

14

Res judicata would bar Baumgartner from litigating any issues which could have been raised on direct appeal, but were not. State v. Perry, 10 Ohio St.2d 175, 180, 226 N.E.2d 104, 108 (1967). The Supreme Court of Ohio will not consider a constitutional question which was not properly raised and argued in the lower courts. Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d at 769; City of Wooster v. Graines, 52 Ohio St.3d 180, 185, 556 N.E.2d 1163, 1168 (1990) (citing cases); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

Baumgartner has failed to properly exhaust her other claims by giving the state high court a full and fair opportunity to rule on her constitutional claims. Rust, 17 F.3d at 160, (citing Manning, 912 F.2d at 881). Baumgartner cannot return to state court to exhaust the claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata. State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).

"If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." Williams, 460 F.3d at 806 (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)). Where state court remedies are no longer available to the petitioner, procedural default and not exhaustion bars habeas review. Id. Where the petitioner fails to demonstrate cause

15

and prejudice to excuse the default, the claim is barred.  Id. at 807.  Baumgartner has failed to file a traverse, thus has made no showing of cause and prejudice.

Therefore, Baumgartner's second (void for vagueness), third (invalid plea), fourth (selective prosecution), fifth (judicial bias), and sixth (prosecutorial misconduct) grounds are procedurally defaulted.  That aspect of her first ground which alleges an Ex Post Facto violation is also procedurally defaulted.

## IV.  FIRST AMENDMENT CLAIM

The first ground of the petition asserts that Baumgartner's "indictment for internet web postings, conviction and sentence of four years in prison violate the First Amendment and the Fourteenth Amendment to the U.S. Constitution, and the Ex Post Facto Clause."  (Doc. 1, at § 12.)  The Ex Post Facto claim is procedurally defaulted.

On direct appeal, Baumgartner raised this claim as her sixth assignment of error:  "Defendant-Appellant's convictions on Counts 4, 5, 12 and 13 in Case No. 478555 violate the First Amendment to the United States Constitution and Art. I, Sec. 11 of the Ohio Constitution because the altered rap song lyrics in question do not constitute a true threat and they are protected artistic expression."  (Doc. 7, RX 77.)

The Ohio Court of Appeals addressed her First Amendment claim as follows:

In the sixth assigned error, Baumgartner argues that the altered rap lyrics are artistic expressions, and thus protected by the First Amendment.  We disagree.

16

It has been recognized that threats that intimidate or cause fear or apprehension by the recipient are unprotected by the First Amendment. FN25 As previously discussed, the trial court found the altered rap lyrics to be a threat of physical violence directed at Bryan and Mandy Dubois. In addition, the trial court found that the altered lyrics referenced Dubois's wife by name and his children.

> FN25. Dayton v. Dunnigan (1995), 103 Ohio App.3d 67, 71, 658 N.E.2d 806, citing Mozzochi v. Borden (C.A.2, 1992), 959 F.2d 1174; United States v. Khorrami (C.A.7, 1990), 895 F.2d 1186; United States v. Bellrichard (C.A.8, 1993), 994 F.2d 1318; United States v. Lee (C.A.8, 1991), 935 F.2d 952.

Nonetheless, Baumgartner maintains that the altered rap lyrics did not constitute a true threat. However, the critical question is whether the victim subjectively believed at the time of the offense that the offender would cause serious physical harm. FN26 Here, as previously discussed the Duboises fled the State of Ohio for a period of time after Baumgartner posted the altered rap song on the internet.

> FN26. State v. Perkins, Cuyahoga App. No. 86685, 2006-Ohio-3678.

We conclude, given the effect of the internet posting, that the altered lyrics constituted a true threat and, as such, was not protected by the First Amendment. Accordingly, we overrule the sixth assigned error.

(Doc. 7, RX 90, at 15-16; Baumgartner, 2009 WL 344988, at *6-*7.) Although Baumgartner presented this claim to the state high court, the court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, RX 99; Baumgartner, 122 Ohio St.3d 1457, 908 N.E.2d 946 (2009).)

The state court of appeals did not rely on U.S. Supreme Court caselaw in coming to its decision, thus the "unreasonable application" element does not apply. Therefore, the question before this court is whether the ruling of the state court was

contrary to clearly established federal law, as determined by the Supreme Court of the United States.  It does not appear that the U.S. Supreme Court has decided any similar case involving "a set of materially indistinguishable facts."  Given that, the state court decision would be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price, 538 U.S. at 640.

The First Amendment's protections of freedom of speech "are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action."  Chaplinsky v. New Hampshire, 315 U.S. 568, 570-571 (1942).  Nevertheless, the Supreme Court has recognized that "the right of free speech is not absolute at all times and under all circumstances."  Id. at 571.  There are certain recognized limits and exceptions, which the Court has justified as having no essential role in the exposition of ideas which the First Amendment protects and encourages.  Id. at 572.

In the context of this case, it is noteworthy that the Supreme Court has distinguished a threat of violence from that which is constitutionally protected free speech.  Virginia v. Black, 538 U.S. 343, 359 (2003) (First Amendment permits state to ban "true threat"); Watts v. United States, 394 U.S. 705, 707 (1969) (per curiam) (distinguishing political hyperbole from true threat); United States v. Hankins, No. 05-6932, 2006 WL 2787074, at * (6th Cir. Sept. 27, 2006) (per curiam); United States v. Polson, 154 F.Supp.2d 1230, 1236 (S.D. Ohio 2001)  See also United

18

States v. Bellrichard, 994 F.2d 1318, 1322 (8th Cir.), cert. denied, 510 U.S. 928 (1993) (First Amendment affords no protection to those who utter direct threats of violence to others); Shackelford v. Shirley, 948 F.2d 935, 938 (5th Cir. 1991) (threats made with intent to injure, focused on particular individual, fall into category of speech deserving no First Amendment protection); United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.), cert. denied, 498 U.S. 986 (1990) (threat distinguished from constitutionally protected speech; citing Watts).

The Supreme Court has stated:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. See Watts v. United States, supra, at 708, 89 S.Ct. 1399 ("political hyberbole" is not a true threat); R.A.V. v. City of St. Paul, 505 U.S., at 388, 112 S.Ct. 2538. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." Ibid. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

Black, 538 U.S. at 359-360. Thus, courts have consistently held that statutes prohibiting threats of physical violence are not, on their face, overbroad. Melugin v. Hames, 38 F.3d 1478, 1484 (9th Cir. 1994) (citing Watts, 394 U.S. at 707).

In Melugin, the court found that the defendant's death threats could not be considered political hyperbole because they were directed in a private communication to a state judicial officer with the intent to influence the state proceedings. Melugin, 38 F.3d at 1484. See also Shackelford, 948 F.2d at 938

19

(threat of violence, focused on particular individual).  The court also pointed out that the issue of whether the prosecution has demonstrated a "true threat" is a question of fact for the jury, not a question of law for the court.  Melugin, 38 F.3d at 1485; see also Bellrichard, 994 F.2d at 1323-1324; Khorrami, 895 F.2d at 1192.

The Seventh Circuit, in a case involving 18 U.S.C. § 876, stated that, in order for the government to establish a "true threat," it must demonstrate that a reasonable person would foresee that the statement at issue would be interpreted by the recipient as "a serious expression of an intention to inflict bodily harm upon," or to kill, that person.  Khorrami, 895 F.2d at 1192 (citing United States v. Hoffman, 806 F.2d 703, 707 (7th Cir. 1986)); see also Bellrichard, 994 F.2d at 1323-1324.  The court emphasized the importance of the context of the statement in determining whether it was a true threat or merely political hyperbole.  Khorrami, 895 F.2d at 1193 (citing Hoffman, 806 F.2d at 707); see also Bellrichard, 994 F.2d at 1321.

Threatening communications received by an individual at home or at work are more likely to perceived by the recipient as a true threat than an oral statement made at a public gathering (as in Watts).  Bellrichard, 994 F.2d at 1321.  See also Melugin, 38 F.3d at 1484 (private communication to state judicial officer); Shackelford, 948 F.2d at 938 (threat of violence, focused on particular individual).

Under Ohio law, "the offense of intimidation does not require that the actions of the speaker cause the victim to believe the speaker would cause imminent physical harm.  Rather, 'it is the unlawful threat of harm, and not actual harm, that

20

serves as a basis for the offense of intimidation.'" State v. Perkins, No. 86685, 2006 WL 2023558, at *3 (Ohio Ct. App. July 20, 2006).  The court of appeals here stated that the victims, "believing the threat to be real, fled Ohio for a period of time." (Doc. 7, RX 90, at 8; Baumgartner, 2009 WL 344988, at *4.)

The Eighth Circuit has noted that "a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern." Bellrichard, 994 F.2d at 1322 (citing United States v. Lincoln, 589 F.2d 379, 382 (8th Cir. 1979) (per curiam)); see also Polson, 154 F.Supp.2d at 1235 (threatening communication does not constitute protected speech simply because there is political idea involved).

On appeal, Baumgartner argued that the statements at issue did not constitute a true threat, and were protected artistic expression.  (Doc. 7, RX 77.) The state court of appeals rejected her argument, noting that the trial court found the statements to be a threat of physical violence directed at the victim and his family.  (Doc. 7, RX 90, at 15-16; Baumgartner, 2009 WL 344988, at *6-*7.)

To obtain habeas relief, Baumgartner has the burden to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  She has failed to do so.

## V.  SUMMARY

Baumgartner has failed to demonstrate that the state court decision on her First Amendment claim was contrary to, or involved an unreasonable application of, clearly established federal law.  Her other grounds have been procedurally defaulted.  The petition for a writ of habeas corpus should be denied.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.

Dated:   Oct. 10, 2012                 /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).